CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

MAY 0 4 2006

JOHN F. CORCORAN, CLERK
BY:
  DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SONIA J. BROWN, ) | |
| ) | Civil Action No. 7:05CV00487 |
| Plaintiff, ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| CARILION HEALTH SYSTEM, et al., ) | |
| ) | By: Samuel G. Wilson |
| Defendants. ) | United States District Judge |

Plaintiff Sonia J. Brown brings this suit pro se against her employer, Carilion Health System (Carilion), alleging that Carilion terminated her in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., because she has hepatitis C.[1] Carilion has moved for summary judgment arguing that Brown cannot establish a prima facie case and that, even if she could, Carilion has articulated legitimate, nondiscriminatory reasons for Brown's termination which Brown cannot rebut. The court agrees and grants Carilion's motion.

I.

Carilion hired Brown in 1998 as a phlebotomist for Carilion Consolidated Labs (CCL), a department of Carilion. Brown claims that she contracted hepatitis C from an infected needle in the course or her employment, and in August 2003, informed her supervisor, exercised her rights under FMLA, and completed the forms necessary to take intermittent leave.

In the course of a deteriorating relationship with an acquaintance who was being treated by a psychiatrist at Carilion, Brown paged the psychiatrist, identified herself as "Sonia," stated that she worked in the lab, and inquired about her acquaintance's mental condition. In early

---

[1] Brown has also named Carilion Consolidated Labs (CCL) as a defendant. According to the pleadings, CCL is simply a department of Carilion. Accordingly, the court construes Brown's claims to be against Carilion.

2004, when she learned of Brown's conversation with her psychiatrist, Brown's acquaintance filed a complaint with Carilion's Vice President of Regulatory Administration and its Privacy Officer under HIPAA, Judie Snipes. Snipes investigated the complaint and determined that Brown had violated HIPAA and Carilion's patient confidentiality policies. On April 1, 2004, Snipes, Randy Vandevander, Director of Operations for CCL, and Raymond Debose, a Human Resources Consultant for Carilion,[2] met with Brown to discuss the infractions and told her that they were giving her a second chance.

The following month, Brown refused a work assignment at Roanoke Memorial Hospital, a Carilion hospital that was short-staffed and in need of a phlebotomist. Brown tendered a written resignation but later reconsidered and returned to work the same day, though she did not go to Roanoke Memorial as directed. (Brown Dep. at 124-34). Brown concedes that Carilion could have terminated her employment for this policy violation. (Brown Dep. at 130-31).

Later that same month, Snipes received a complaint that Brown had inappropriately asked lab technicians for medical information concerning a trauma patient. Snipes investigated again and received a written statement from Brown's co-worker Mark Murphy, a lab technician, describing the alleged confidentiality violation. Snipes confronted Brown concerning this third incident, and though Brown denied any inappropriate behavior and claimed that Murphy's complaint was false, Snipes did not believe her. Snipes recommended Brown's termination to Vandevander and Debose, who agreed with Snipes' recommendation.

On June 12, 2004, Carilion terminated Brown's employment, and Brown claims that

---

[2]As a Human Resources consultant, Debose provides Human Resources advice to the managers in the phlebotomy area, including Vandevander.

2

Case 7:05-cv-00487-SGW-PMS   Document 46   Filed 05/04/06   Page 2 of 8   Pageid#: 366

statements made by Vandevander and Snipes at the time led her to believe that they were terminating her due to her illness. Brown claims that Vandevander said, "We consider you a liability to the company." Brown also claims that during the investigation concerning the first incident, Snipes told her, "I have investigated you so thoroughly that I know every hair that grows on your head" and said "no comment" when Brown told Snipes that she (Brown) was not "in a position to" breach patient confidentiality "because of what I have to deal with." Carilion claims that it terminated Brown because she wrongfully accessed a patient's medical records for personal reasons.

Brown filed a charge of discrimination with the EEOC on July 28, 2004. The EEOC investigated and issued a right-to-sue notice, and Brown filed the current suit against Carilion, Murphy, Snipes, Vandevander, and Debose. The court dismissed the individuals from the action and also dismissed Brown's retaliation claim. The remaining defendant, Carilion, has moved for summary judgment, and the court has heard argument on the motion.

Because Brown is proceeding pro se, the court has given her great latitude. The court liberally construed her complaint and permitted her to amend it. After the summary judgment hearing, the court allowed her to submit additional evidence. When Brown filed a letter, claiming that Carilion had failed to provide her with requested FMLA documentation she considered "substantial and incriminating," the court directed Carilion to provide Brown with all FMLA documentation and permitted Brown to respond.[3]

---

[3] In her response, Brown claims that she did not receive her FMLA application form and that she remembers her co-worker placing the forms in an interdepartmental envelope and sending them to the Human Resources department. Carilion contends that it has provided every document from Brown's "Leave of Absence" file, which includes her FMLA documentation, and that it provided 45 documents in accordance with the court's March 29, 2006, order.

## II.

To establish a prima facie case of discrimination, Brown "must prove by a preponderance of the evidence that (1) she was in the protected class; (2) she was discharged; (3) at the time of the discharge, she was performing her job at a level that met her employer's legitimate expectations; and (4) her discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination." Ennis v. Nat'l Ass'n of Business and Educational Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995). If Brown has established a prima facie case, then the burden shifts to Carilion to present evidence of a legitimate, nondiscriminatory reason for the employment action, which, "if believed by the trier of fact, would support the finding that unlawful discrimination was not the cause of the employment action." Ennis, 53 F.3d at 58. If Carilion articulates a legitimate, nondiscriminatory reason, then Brown must offer evidence from which a jury could find that Carilion's proffered reason is pretextual. King v. Rumsfeld, 328 F.3d 145, 150-51 (4th Cir. 2003) (setting forth the McDonnell Douglas proof scheme). Brown can prove pretext by showing that the "explanation is 'unworthy of credence' or by offering other forms of circumstantial evidence sufficiently probative of [disability discrimination]." Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004). With these precepts in mind, Carilion is entitled to summary judgment because Brown's evidence is not sufficient to establish the fourth essential element of a prima facie case, evidence that her discharge occurred under circumstances that

---

Brown also claims that some of the Personnel Action forms bear the initials "RD" on the bottom, and she believes that "RD" stands for Raymond Debose. The Personnel Action forms with the "RD" initials are dated 2000 and 2001, and Brown did not contract hepatitis C until April 2003. Therefore, even if "RD" stands for Raymond Debose, these forms, which do not mention Brown's illness and actually pre-date her illness, are not evidence that Debose knew about Brown's hepatitis C condition. The two Personnel Action forms that post-date Brown's condition do not bear the "RD" initials nor do these forms mention Brown's illness.

4

raise a reasonable inference of unlawful discrimination. Moreover, even if her evidence were sufficient to establish a prima facie case, she has no evidence of pretext, evidence that Carilion's explanation that it fired her because it believed she had violated company policy on at least two occasions is "unworthy of credence."

Carilion contends that Brown has failed to establish a causal connection between her hepatitis C condition and her termination because none of her evidence gives rise to an inference of discrimination.[4] Brown theorizes that Debose became aware of her hepatitis C when she completed various FMLA forms in late 2003; that Debose shared this knowledge with Snipes and Vandevander; and that Snipes, Vandevander, and Debose terminated Brown because of her illness.

The first problem with Brown's theory is that if Debose knew about Brown's illness in late 2003, then he knew about it not only when he, Snipes, and Vandevander terminated Brown for the third violation of Carilion's policies but also when the first and second policy violations occurred. Carilion had not one but two opportunities to fire Brown before the third incident, and it is simply illogical to infer that Carilion waited for a third policy violation to occur before acting with a discriminatory motive. Indeed, Brown concedes that Carilion could have fired her for the second incident, and Carilion's repeated leniency towards Brown is wholly inconsistent with her theory that Carilion terminated her because of her condition. Even in the light most favorable to Brown, therefore, her evidence fails to raise an inference that Carilion terminated her

---

[4]Carilion also contends that Brown cannot show that she was "disabled" as the ADA defines that term or that her job performance was meeting Carilion's legitimate expectations. The court does not reach this contention but rather assumes, without deciding, that Brown is disabled under the ADA.

5

employment because she had hepatitis C.

The second problem with Brown's theory is its lack of evidentiary support. Brown has neither offered nor forecast any evidence that the people involved in the decision-making process, Snipes, Debose, or Vandevander, were even aware that Brown had hepatitis C when they fired her. If Brown fails to produce evidence that Carilion had "any knowledge of a claimed disability on the part of plaintiff, or any other reason to perceive the plaintiff as being disabled," then Brown's claim fails. Meyer v. Qualex, Inc., 388 F. Supp. 2d 630, 636 (E.D. N.C. 2005); see Hedberg v. Indiana Bell Telephone Co., 47 F.3d 928, 931 (7th Cir. 1995) (holding that an employer cannot be held liable under the ADA if it had no knowledge of the employee's alleged disability). In supporting affidavits, Snipes, Vandevander, and Debose, claim that they had no knowledge of Brown's hepatitis C until she filed this action. Although Brown concedes that she never discussed her hepatitis C with these individuals, (Brown Dep. at 18), she alleges, without factual support, that Debose, as a Human Resources consultant, would have had access to her FMLA forms and that she could not have exercised her rights under FMLA without Debose "knowing [the] complete details of the situation."[5] However, the allegation is, at best,

---

[5]After the summary judgment hearing, Brown submitted additional evidence, including the Carilion FMLA Leave of Absence policy and the Carilion Workers' Compensation policy. Brown claims that these documents show that Raymond Debose, a Human Resources consultant and one of the people involved in the decision-making process to terminate Brown, "had access to my FMLA claim" and that she could not have received FMLA benefits without Debose "knowing [the] complete details of the situation." Carilion has filed a motion to strike this evidence as improper and prejudicial, claiming that Brown's statements are purely speculative. The court denies Carilion's motion to strike; however, the additional evidence does not change the outcome of the summary judgment motion.

Among other things, the Carilion FMLA Leave of Absence policy states that when an employee seeks FMLA benefits, the "[e]mployee notifies [the] manager" and "contacts HR Rep who explains FMLA and sends Certification of Health Care Provider form" to the employee's physician. Here, Brown does not claim that she contacted Debose to let him know that she

6

speculative and not capable of supporting a reasonable inference that Debose, in fact, knew of her condition.

Besides Brown's allegation that Debose had to know of her condition because of his position, Browns claims that Snipes, Debose, and Vandevander knew about her illness based on statements made during the investigation of the first incident and at the time of her termination. For instance, Brown claims that Vandevander said, "We consider you a liability to the company." There was no mention of hepatitis C in any of these statements, however, and Brown concedes that she had no conversations with Snipes, Debose, or Vandevander, about her condition. In the absence of other proof, these innocuous statements do not support a reasonable inference that they knew of her condition, or that, even if they did know, that they discharged her "under circumstances that raise a reasonable inference of unlawful discrimination." Therefore, she has not established a prima facie case.

Even if Brown had established a prima facie case, Carilion has articulated a legitimate, nondiscriminatory reason for Brown's termination–Carilion's belief that Brown violated Carilion's patient confidentiality policy on two occasions–which Brown cannot show to be pretextual. "When an employer gives a legitimate, non-discriminatory reason for discharging the plaintiff, 'it is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it was truly the reason for the plaintiff's termination." Hawkins v. Pepsico, Inc., 203 F.3d 274, 279 (4th Cir. 2000) (citations omitted); DeJarnette v. Corning, Inc.,

---

needed FMLA leave; that Debose explained the FMLA benefits to her; or that she gave Debose a Certification of Health Care Provider form. Instead, Brown makes the conclusory allegation that her FMLA request would not have been approved unless Debose knew "the complete details of the situation."

7

133 F.3d 293, 299 (4th Cir. 1998) ("With respect to the opinion testimony, we have repeatedly explained that '[i]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff.'"). Though Brown denies the second alleged violation of Carilion's patient confidentiality policy and disagrees with Carilion's conclusion about her behavior, this disagreement cannot establish pretext. The question is not whether Brown violated Carilion's confidentiality policy but whether Carilion believed Brown violated that policy.

The burden rests on Brown to show that Carilion's stated reasons for terminating her were not the real reasons for her discharge. To that end, she offers conclusory allegations that Murphy's complaint was false and that the people involved in the decision-making process made comments to her that led her to believe that they knew about her hepatitis C. Even in the light most favorable to Brown, however, her evidence simply is not sufficient to support a reasonable inference that Snipes, Vandevander, or Debose terminated her because she had hepatitis C rather than because they believed she violated Carilion's patient confidentiality policy. It follows that Brown has failed to establish a genuine issue of material fact, and Carilion is therefore entitled to summary judgment.

### III.

For the reasons stated herein, the court grants Carilion's motion for summary judgment.

**ENTER:** This 3rd day of May, 2006.

UNITED STATES DISTRICT JUDGE

8

Case 7:05-cv-00487-SGW-PMS   Document 46   Filed 05/04/06   Page 8 of 8   Pageid#: 372